UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 1:23-cr-00115-ADA-BAM |
|---|---|
| Plaintiff, | |
| v. | ORDER GRANTING MOTION TO REVOKE DETENTION ORDER |
| ALEJANDRO HAWKINS, | (ECF No. 138) |
| Defendant. | |

**I.**

**Procedural Background**

Defendant Alejandro Hawkins faces one count of distributing cocaine in violation of 21 U.S.C. § 841(a)(1). (ECF No. 122 at 12.) The parties agree that the conduct charged in the indictment concerns the alleged sale of 2.7 grams of cocaine on March 13, 2023. (ECF No. 138 at 6; ECF No. 145 at 4.) At a hearing on June 2, 2023, the assigned Magistrate Judge ordered Mr. Hawkins detained pending trial after determining that no combinations of release conditions would reasonably assure his appearance in Court and the safety of the community. (ECF No. 98.) On June 16, 2023, Mr. Hawkins filed a motion to revoke the Magistrate Judge's detention order, pursuant to 18 U.S.C. § 3145(b). (ECF No. 138.) The government filed its opposition on June 21, 2023. (ECF No. 145.) The Court held a hearing on July 18, 2023. Douglas Foster appeared for Mr. Hawkins and Justin Gilio appeared for the government.

## II.

## Factual Background

During the course of a racketeering investigation into members of the Norteño street gang, a federal wiretap recorded Mr. Hawkins speaking with a Norteño member about the sale of cocaine. (ECF No. 145 at 2.) The government subsequently placed a wiretap on Mr. Hawkins' phone and recorded numerous calls related to drug trafficking over a thirty-day period. (*Id.* at 1–2.) The wiretap also recorded a call in which Mr. Hawkins discussed a potential firearm sale involving a "45" to an unidentified man. (*Id.* at 4.) On March 13, 2023, surveillance units observed Mr. Hawkins make an alleged drug sale. (*Id.* at 4.) After Mr. Hawkins left the area, officers stopped the customer and located two baggies of cocaine nearby. (*Id.*) On May 25, 2023, officers searched Mr. Hawkins' residence pursuant to a search warrant, recovering several bindles of cocaine, $14,714, approximately 950 rounds of ammunition, a Kevlar vest, two high-capacity magazines, a P80 firearm mold, and sixteen firearms, seven of which belonged to Mr. Hawkins and were found in his room. (*Id.* at 5–6.) Two of the firearms recovered from Mr. Hawkins' room "were unserialized Personally Manufactured Firearms (PMF) AR-15 type rifles with optics." (*Id.* at 5.) Though the government has documentation that Mr. Hawkins owns a "Combat Commander 1911 Colt 45 Caliber pistol," the search did not uncover this firearm, and there is no record that Mr. Hawkins sold it through a licensed firearms dealer. (*Id.* at 11.)

## III.

## Legal Standard

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Consequently, courts may detain a defendant prior to trial only when "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. 3142(b); *see also United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Under certain conditions – including in cases, like this one, where the defendant faces a maximum term of imprisonment of ten years or more under the Controlled Substances Act, 21 U.S.C. § 801 et seq. – courts presume detention is necessary. 18 U.S.C. § 3142(e)(3)(A). If a

defendant proffers evidence to rebut this presumption, the government assumes the burden of persuading the court that detention is necessary. *Hir*, 517 F.3d at 1086. To rebut the presumption of detention, a defendant "must produce only 'some evidence' that he is not a flight risk and does not pose a danger to the community." *United States v. Clark*, 791 F. Supp. 259, 260 (E.D. Wash. 1992). The government's burden, however, requires it to establish by a "clear preponderance of the evidence" that the defendant presents a risk of flight and by clear and convincing evidence that the defendant presents a danger to the community. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985); *see also* 18 U.S.C. § 3142(f). Courts consider the following factors in determining whether the government has met its burden: (1) the nature and circumstances of the charged offense; (2) the weight of the evidence; (3) the defendant's history and characteristics, including the defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, and history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release." 18 U.S.C. § 3142(g).

"Doubts regarding the propriety of release should be resolved in favor of the defendant. *Motamedi*, 767 F.2d at 1405; *see also United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). If the court determines that there are conditions that will reasonably assure the defendant's appearance and the safety of the community, it must release the defendant from pretrial detention under the least restrictive of those conditions. *Motamedi*, 767 F.2d at 1405.

"If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). A district court reviews a magistrate judge's detention order de novo. *United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990).

## IV.
## Discussion

Mr. Hawkins has proffered some evidence regarding his history, employment, ties to the area, and circumstances surrounding the allegations. The burden, therefore, has shifted to the

government to persuade the Court that there is no combination of conditions that can reasonably assure Mr. Hawkins' appearance in court and the safety of the community.

**A.      Assessing the § 3142(g) factors**

**i.      Nature and circumstances of the charged offense**

As the government notes, Congress has determined that distribution of cocaine is a particularly serious offense. (ECF No. 145 at 8.) The fact that charges under 21 U.S.C. 841 trigger a statutory presumption of dangerousness reflects this legislative conclusion. 18 U.S.C. § 3142(e)(3)(A); *accord United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) ("[I]t is clear that the harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'"); *United States v. Strong*, 775 F.2d 504, 507 (3d Cir. 1985) ("The statutory language, as well as the legislative history, [unequivocally] establishes that Congress intended to equate traffic in drugs with a danger to the community."). While Mr. Hawkins has proffered evidence to rebut the presumption of detention, that proffer does not erase the presumption. *Hir*, 517 F.3d at 1086. "[R]ather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g).'" *Id.* (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).

Recognizing the dangerous nature of drug distribution is however, only one half of the inquiry under the first § 3142(g) factor. The Court must also consider the circumstances surrounding the conduct at issue. Here, the government has charged Mr. Hawkins with a single sale of 2.7 grams of cocaine. There are no allegations of threats, violence, or the presence of weapons during Mr. Hawkins' interaction with the alleged buyer.

**ii.      Weight of the evidence**

Out of all the § 3142(g) factors, "the weight of the evidence is the least important, and the statute neither requires nor permits a pretrial determination of guilt." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The government contends that there is substantial evidence pointing toward Mr. Hawkins' guilt. (ECF No. 145 at 9.) It proffers that a wiretap recorded Mr. Hawkins discussing drug trafficking on multiple occasions over the course of a month. (*Id.*) Moreover, a search of Mr. Hawkins' home revealed narcotics, weapons, and large sums of money

1 consistent with "high frequency" drug trafficking behavior. (*See id.* at 5–6, 10.) Finally, a surveillance team observed the transaction at issue in this case after monitoring the wiretap on Mr. Hawkins' phone. (*Id.* at 4.) Mr. Hawkins does not dispute this argument, instead emphasizing that courts accord the least weight to this factor. (ECF No. 138 at 15.)

        **iii.**        **Mr. Hawkins' history and characteristics**

Mr. Hawkins has no criminal history and asserts that he has no record of problematic drug or alcohol use. (ECF No. 138 at 13.) Additionally, Mr. Hawkins emphasizes his strong ties to the Eastern District. He has lived in the area since his childhood. (*Id.* at 12.) He also has numerous family members nearby, including his parents and three siblings who have attended each of Mr. Hawkins' court appearances. (*Id.*) Not only does Mr. Hawkins have strong ties to the Eastern District, but he also has no passport or ties outside California, evidencing a lack of incentive to flee the area. (*Id.* at 13.) Finally, Mr. Hawkins asserts that, upon his release, he will have full employment at HMC Farms in nearby Kingsburg, where he has worked as a technician and laborer since 2019. (*Id.*)

The government asserts that Mr. Hawkins' strong ties to the Eastern District are exactly what have enabled him to operate as a "high frequency" drug dealer and that his release will permit him to continue this pattern of behavior. (ECF No. 145 at 10.) Even though the government has charged Mr. Hawkins with only a single distribution count, it argues that the Court can infer that Mr. Hawkins operates a large-scale distribution business based on the narcotics and firearms recovered from his home as well as the numerous trafficking-related calls that the wiretap intercepted. (*Id.* at 9–10.) In light of this, the government argues, Mr. Hawkins' employment at HMC Farms is concerning because it indicates that he is "motivated by profit rather than merely trying to provide for himself or his family." (*Id.* at 10.) Finally, the government posits that Mr. Hawkins' possession of unserialized firearms indicates "a history of not complying with directives" and makes him a flight risk. (*Id.* at 10–11.)

As an initial matter, the Court rejects the government's argument that Mr. Hawkins' possession of unserialized firearms inside his own home makes him a flight risk. The government cites to California Code of Regulations section 5505 et seq. to demonstrate that Mr. Hawkins should

have sought to add serial numbers to these firearms. It is not clear to the Court, however, that this conduct was criminal at the time of Mr. Hawkins' arrest. *Cf.* Cal. Pen. Code § 23920(b) (criminalizing, on or after January 1, 2024, the knowing possession of "any firearm that does not have a valid state or federal serial number or mark of identification"). Even if it had been, the charge would have been classified as a misdemeanor. *Id.* Describing such conduct as "a history of not complying with directives" sufficient to warrant pretrial detention is hyperbolic to say the least.

Nor does the Court find compelling the government's implication that Mr. Hawkins' employment as a technician and laborer somehow makes him a greater potential danger to the community. Not only does full-time employment make it less likely that Mr. Hawkins will need to engage in illegal activity to make ends meet, but it will also "bring him into daily contact with law-abiding co-workers and occupy his time, reducing the likelihood of his engaging in acts that endanger the community if released." *United States v. Orozco*, No. 2:18-cr-00104, 2020 WL 2745694, at *3 (E.D. Cal. May 27, 2020). Moreover, the fact that Mr. Hawkins has maintained a job since 2019 may cut against the government's argument about the depth of his involvement in the drug trade. *Cf. United States v. Freitas*, 602 F. Supp. 1283, 1295 (N.D. Cal. 1985) (listing "the fact that the defendant has substantial resources even though he has no regular occupation" as a factor indicating a deep involvement in the drug trade).

Most persuasive are the results of the government's wiretap of Mr. Hawkins' phone and the items it recovered during the execution of the search warrant. This evidence certainly points to Mr. Hawkins' involvement in drug trafficking beyond the single instance at issue in this case. This is concerning. Nevertheless, as Mr. Hawkins points out, the government has not charged any of this broader conduct, and the Court must not presume that Mr. Hawkins is guilty of the charged offense, much less other uncharged conduct. *See Motamedi*, 767 F.2d at 1408.

   **iv. Nature and seriousness of danger to the community**

Beyond the inherent dangerousness of drug trafficking, the government asserts that the Court should pay particular attention to the number of firearms officers recovered at Mr. Hawkins' residence. (ECF No. 145 at 10.) Apart from the location of firearms within his own home, the

government has provided no evidence or allegation that Mr. Hawkins used firearms – or any weapon for that matter – during any drug transaction. While narcotics trafficking may often involve the use of firearms, courts have not found "a presumption as to the presence of a firearm in illicit narcotics transactions." *United States v. Willis*, 899 F.2d 873, 875 (9th Cir. 1990). Moreover, Mr. Hawkins asserts – and the government does not dispute – that he and his family legally owned the firearms recovered in his residence. (ECF No. 138 at 16.) Regardless, those firearms are currently the subject of forfeiture proceedings and no longer available to Mr. Hawkins. (*Id.*) The government does not argue, or present any evidence, that Mr. Hawkins still possesses any firearms that would make him a continuing threat to the community. *See United States v. Marquez*, No. 18-cr-00197-CRB-1, 2018 WL 4773152, at *3 (N.D. Cal. Oct. 3, 2018) (holding that the lack of evidence that the defendant still possessed firearms meant that he did "not necessarily pose any additional danger by being at [a residential treatment facility] rather than in government custody").

**B.     Whether there are any conditions that will reasonably assure Mr. Hawkins' appearance in court and the safety of the community**

First, the Court cannot discern any evidence beyond the fact of indictment that would make Mr. Hawkins a flight risk in this case. Even if it had, Mr. Hawkins' strong familial and employment ties to the area would address any concerns the Court might have.

Whether Mr. Hawkins' release presents a danger to the community is a closer question. The Court has concerns about the seriousness of the charged conduct and the evidence that the transaction at issue in this case is not an isolated incident. Given Mr. Hawkins' lack of criminal history, his ability to obtain full-time employment, his strong familial connections to the Eastern District, and the lack of any allegations of violence, the Court cannot find by clear and convincing evidence that there are no conditions of release that will ensure the safety of the community. This accords with the assessment of Pretrial Services, which has presented the Court with suggested terms for Mr. Hawkins' pretrial release.

Contrary to the government's argument, these conditions do not rely entirely on Mr. Hawkins' good faith compliance. (*See* ECF No. 145 at 11.) For example, location monitoring, "can deter criminal conduct by making a defendant 'aware that he is being monitored and is likely

therefore to be apprehended should a . . . crime be reported at a time, and a location, at which he is present.'" *United States v. Russell*, 45 F.4th 436, 441 (D.C. Cir. 2022) (quoting *Belleau v. Wall*, 811 F.3d 929, 935 (7th Cir. 2016)).  Additionally, placing Mr. Hawkins with a third-party custodian puts an onus on his family, rather than Mr. Hawkins himself, to account for his whereabouts and activity.  Considering the information each party has presented, the Court finds that these conditions will reasonably assure the safety of the community upon Mr. Hawkins' release from custody.

Accordingly,

1. Mr. Hawkins' motion to revoke the Magistrate Judge's detention order, (ECF No. 138), is granted;

2. Mr. Hawkins is ordered released at 9:00a.m. on the business day following the date this order is signed, under the conditions recommended by Pretrial Services in their Supplemental Pretrial Services report dated June 2, 2023;

3. Mr. Hawkins is ordered released subject to location monitoring under home detention to allow him only to leave the residence for work only and only during the hours needed to work.

4. Mr. Hawkins is ordered to be placed under the custody of the third-party custodian identified by Pretrial Services.

IT IS SO ORDERED.

Dated:   July 18, 2023

UNITED STATES DISTRICT JUDGE